HENDRY, Judge.
Appellants/defendants appeal from an adverse final judgment rendered in favor of appellee/plaintiff in a non-jury proceeding wherein appellee sought the return of certain money allegedly owed to him by appellants pursuant to a real estate trust agreement entered into by the parties which created a joint venture for the development of lakefront land in Arcadia, Florida. The venture resulted in an economic loss prompting the filing of this lawsuit.
At trial, the sole determinative issue was whether, in light of the trust agreement and certain transactions involving the financing of the venture, appellee was to share solely in the profits of the joint venture or be susceptible to the losses incurred by the venture, as well. The final judgment entered by the able trial judge concisely states the pertinent facts of the case, and is set forth as follows:
“1. Plaintiff, O’NEAL, entered into a joint enterprise with Defendants whereby he conveyed his contract rights to purchase a unique parcel of acreage located in Desoto County, Florida for which the other participants agreed that he would receive for such conveyance the return of his deposit for the contract of $25,000 plus a thirty (30%) percent interest in the profits of the trust enterprise. As a further consideration he was to be relieved of any responsibility for the financing or other obligations of the enterprise. The financing obligations and costs of the enterprise were to be the responsibility of the defendant, COX, and the other Defendants, with the exception of WARD, who was to furnish legal services, and PIGG, who was to furnish engineering services, both of whom were to be relieved of any obligations of the enterprise.
“2. The transaction progressed to the point where O’NEAL performed in accordance with the agreement, conveying his entire interest in the real property to the entity described as The Desoto Peace River Trust with WARD acting as the trustee. However, due to the failure of COX and the other Defendants, with the exception of WARD and PIGG, to provide the necessary financing for the project as originally agreed, Plaintiff was owed as of July 5, 1973 the sum of $10,-000 representing the balance of the amount of the deposit on the purchase contract.
“3. Likewise due to the failure of the Defendant, COX, and the other Defendants, with the exception of WARD and PIGG, to secure the permanent financing of the enterprise, it was necessary to obtain interim financing for which it was required that all of the participants execute a promissory note in the principal amount of $120,000. The facts as adduced showed that the note was executed by the Plaintiff, WARD and PITTS as accomodation endorsers, despite the fact that they were ‘carried’ participants in the venture.
*530 “4. On December 12, 1973, O’NEAL advanced the sum of $23,621.92 to the venture for the purpose of paying a portion of and renewing the note for the interim financing, which monies advanced have not been repaid to the Plaintiff by the Defendants liable therefor.
“5. The Defendants contend that the Plaintiff was to share in the profits of the enterprise and since the Plaintiff advanced funds to make a payment on the promissory note, that he is in fact a general partner in the venture and subject to any of the losses and liabilities that result therefrom.
“6. The evidence fails to support this contention of the Defendants, in that the record disclosed that Plaintiff’s position was specially recognized by the Defendants as being immune from responsibility for the financing, development, promotion or other liabilities of the enterprise. Further, there was no evidence that the status of the Plaintiff, O’NEAL, was changed by reason of his voluntary contribution towards the payment of the promissory note for the interim financing.
“7. The evidence showed that the transaction was actually a sale by the Plaintiff, O’NEAL, of his land interest in consideration for the reimbursement to him of the amount of his deposit plus a thirty (30%) percent interest in the enterprise, free of any responsibility for the financing, development or other obligations thereof.”
Based upon the above facts, the trial judge, inter alia, ordered that appellee was entitled to the sum of THIRTY-THREE THOUSAND, SIX HUNDRED TWENTY-ONE DOLLARS and NINETY-TWO CENTS ($33,621.92), representing the sum advanced by appellee for the interim financing plus the amount remaining due and owing appellee for the deposit on the purchase contract.
Appellants’ sole point on appeal questions the correctness of the trial judge’s factual finding that appellee was not “a general partner in the venture and subject to any of the losses and liabilities that result therefrom.” Appellants contend that appellee’s contribution towards payment of the promissory note, (a situation necessitated by appellants’ failure to totally finance the undertaking with borrowed money in accordance with the intent manifested in the trust agreement), was an expression of appellee’s understanding that he would be liable for any losses sustained by the joint venture. Appellee, on the other hand, argues that he signed the note solely as an accommodation, and at the insistance of the lending institution which required that all parties to the joint venture sign the promissory note. In no way, appellee contends, was it his intention to be subject to liability for any losses of the joint venture.
The trial judge, after weighing the testimony, accepted appellee’s position, as evidenced by his findings set forth above. Appellants would have us either reweigh the testimony or reject appellee’s testimony in favor of appellant’s version of the facts. We can do neither. Shaw v. Shaw, 334 So.2d 13 (Fla.1976). In fact, had we the power to reevaluate the evidence we would reach the same conclusion as the trial judge.
Therefore, as there was competent substantial evidence supporting the decision of the trial judge, the final judgment appealed from is hereby affirmed.
Affirmed.